**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CAMILLE HANEY and<br>BARBARA SLACK, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:18-cv-05417 |
| | ) | |
| v. | ) | |
| | ) | |
| BRIDGE TO LIFE, LTD., a Wyoming corporation, and<br>STEVAN F. SCHWEIGHARDT, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiffs, Camille Haney ("Ms. Haney") and Barbara Slack ("Ms. Slack) (together, "Plaintiffs"), by and through their undersigned attorneys, allege for their Complaint against Defendant Bridge to Life, Ltd., a Wyoming corporation ("BTL" or the "Company") and Defendant Stevan Schweighardt ("Mr. Schweighardt") (collectively "Defendants") as follows:

**INTRODUCTION**

1.      BTL is a corporation originally formed in 2005 under the laws of the State of Delaware, and the Company's business centers around organ preservation solutions and pumps.

2.      Mr. Schweighardt is the Company's Chief Executive Officer and Chairman of the Board of Directors, and has been in those roles at all relevant times for purposes of this Complaint.

3.      Shortly after its formation, BTL recruited Mses. Haney and Slack to spread awareness about BTL's mission to distribute organ preservation solutions.

4.      Ms. Haney's services were highly valuable in light of her position as Special Assistant to the then-U.S. Secretary of Health and Human Services for organ donations.

5.     Ms. Haney was recruited due to her relationship with the then-U.S. Secretary of Health and Human Services, as well as her industry knowledge and experience in the subject of organ donations.

6.     Ms. Slack worked closely with Ms. Haney to provide services to the Company, including scheduling and attending meetings and engaging in marketing efforts.

7.     In 2006, in exchange for their services, Mses. Haney and Slack were each granted 100,000 shares of Common Stock by BTL.

8.     By letter dated on or about February 27, 2014, BTL notified its stockholders that the Company had redomesticated in the State of Wyoming.  In connection therewith, the Company purported to undertake to replace all of its outstanding original stock certificates in the Delaware entity with new stock certificates in the Wyoming entity.

9.     Ms. Haney received this letter, but Ms. Slack was not notified of her right to exchange her 100,000 shares of BTL Delaware stock in exchange for the same number of shares in the Wyoming entity.

10.     BTL instructed Ms. Haney to provide the Company with a signed Affidavit of Lost Stock Certificate in order to receive 100,000 shares of BTL stock in the Wyoming entity.

11.     Pursuant to BTL's instruction, Ms. Haney returned a signed Affidavit of Lost Stock Certificate.  However, BTL refused to send her a stock certificate for the same number of shares of BTL stock in the Wyoming entity.

12.     In March 2014, unbeknownst to Ms. Haney, a former Director of the Company falsely claimed that Ms. Haney verbally agreed to cancel her stock certificate in BTL, despite Ms. Haney returning a signed Affidavit of Lost Stock Certificate in order to receive her new stock approximately one month later.

13.     Ms. Haney has never agreed to cancel or otherwise surrender her stock certificate in BTL under any circumstances.

14.     Mses. Haney and Slack have demanded in writing that the Company provide them with their respective shares of BTL stock in the Wyoming entity.

15.     To date, Defendants have refused to issue to Mses. Haney and Slack an equal interest in the Wyoming entity, despite their demands for same.

16.     Plaintiffs bring this action against Defendants for: (i) civil theft under Wis. Stat. § 895.446; (ii) breach of contract; (iii) promissory estoppel; (iv) unjust enrichment; (v) violation of Wisconsin securities laws; (vi) violation of the Delaware Securities Act; (vii) violation of the Wyoming Uniform Securities Act; (viii) violation of the Securities Act of 1933; (ix) violation of the Securities Exchange Act of 1934; and (x) declaratory judgment.

## PARTIES

17.     Plaintiff Camille Haney is a resident of Wisconsin residing at 3939 Monona Dr., Monona, WI 53716.

18.     Plaintiff Barbara Slack is a resident of Wisconsin residing at 4305 Monona Dr., Monona, WI 53716.

19.     Defendant BTL is a Wyoming corporation redomesticated under the laws of Wyoming pursuant to WY Stat. § 17-16-1801 of the Wyoming Business Corporation Act. BTL's principal place of business is located in Illinois.  BTL is therefore a resident domiciled in Wyoming and Illinois.

20.     Upon information and belief, Defendant Stevan Schweighardt is a resident of Illinois residing at 140 Manor Dr., Deerfield, IL 60015.

## JURISDICTION

21.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.  Plaintiffs believe that BTL Common Stock has a value of no less than $4.00 per share.

22.     Venue is proper in this district pursuant to 28 USC §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

*Defendants Recruit Mses. Haney and Slack to Assist the Company in becoming Operational in Exchange for Shares of Common Stock in the Company*

23.     BTL is a medical supply company that develops, manufactures, and sells organ transplant solutions in the United States and internationally.

24.     BTL was founded in 2005 and incorporated in Delaware on June 1, 2005.

25.     Mr. Schweighardt serves as the Company's Chief Executive Officer and is Chairman of its Board of Directors.

26.     Shortly after its formation, James Hinz, one of BTL's founding stockholders, recruited Mses. Haney and Slack to raise awareness about BTL's mission to distribute organ preservation solutions and assist the Company in becoming operational.

27.     Upon information and belief, Ms. Haney was recruited specifically because of her experience as Special Assistant to U.S. Secretary of Health and Human Services Tommy G. Thompson during the George W. Bush Administration.

28.     Secretary Thompson was a leading advocate for healthcare when he served as U.S. Secretary of Health and Human Services from 2001 to 2005.  Among other things, he was responsible for the Organ Donation Breakthrough Collaborative, a well-known program

launched in 2003 with the objective of increasing organ donation rates. Within four years, by 2007, the rate of organ donations increased by thirteen percent largely due to the efforts of the Organ Donation Breakthrough Collaborative.

29.     Ms. Haney was significantly involved in Secretary Thompson's initiative, focusing her efforts on organ donation. This made Ms. Haney an attractive candidate for BTL to raise awareness about its mission and assist in enabling the Company to operate as a going concern.

30.     Ms. Slack worked closely with Ms. Haney to raise awareness about the Company's mission to distribute organ preservation solutions, including by scheduling and attending meetings and engaging in marketing efforts. Ms. Slack's early contributions to BTL facilitated the Company's efforts to raise capital and operate as a going concern.

31.     Recognizing the value of Plaintiffs' services and as part of their compensation, in or around 2006, Defendants granted Ms. Haney 100,000 shares of BTL Common Stock and granted Ms. Slack 100,000 shares of BTL Common Stock.

32.     Plaintiffs have remained stockholders of BTL since approximately 2006.

*Defendants Instruct the Company's Stockholders to Relinquish Their Delaware Stock Certificates for an Equal Number of Shares in the Wyoming Entity*

33.     BTL retained Shawn G. Rice of the firm Rice Business Law, LLC ("Mr. Rice"), to assist with the Company's redomestication to Wyoming.

34.     Mr. Rice also became a Director of the Company on or about December 19, 2013, though he was later removed from the Board of Directors after being suspended from the practice of law by the Wisconsin Supreme Court.

35.     At all times pertinent hereto, Mr. Rice acted at the direction of Mr. Schweighardt.

36.     On or about February 19, 2014, BTL was redomesticated under WY Stat. § 17-16-1801 of the Wyoming Business Corporation Act.  *See* Foreign Profit Corporation Articles of Domestication, attached hereto as Exhibit A.

37.     By letter dated February 27, 2014, Mr. Rice, acting under the direction of Mr. Schweighardt, requested that BTL's shareholders, including Ms. Haney, retire their existing stock certificates so they could be reissued new stock certificates in the Wyoming entity.  The letter states, in relevant part:

> As you are aware, the [Company] was recently re-domesticated to the State of Wyoming.  As a result, all of the original stock certificates issued under Delaware corporate law are to be replaced and superseded with new Wyoming stock certificates.
>
> We are writing as legal counsel for the [Company] to ask your cooperation and assistance with the re-issuance of new stock certificates.  The first step is to collect and "retire" all outstanding and issued Delaware certificates . . . .
>
> In the event you have misplaced, lost or otherwise cannot send us the certificate, we have prepared and enclosed an Affidavit of Lost [Stock] Certificate for your review, completion, and signature before a notary public.  We ask that you return the Affidavit to the undersigned in the enclosed postage-paid, pre-addressed envelope, if you cannot return all of your original stock certificate(s).
>
> ***Upon our receipt of the certificate(s) and/or Affidavit for all shares of common stock held by you, we will issue to you a new Wyoming stock certificate*** . . . .

*See* Exhibit B, Letter from Shawn G. Rice, Esq., dated February 27, 2014 (emphasis added).

38.     Ms. Haney was unable to locate her stock certificate for 100,000 shares of BTL stock in the Delaware entity and signed and returned an Affidavit of Lost Stock Certificate attached to the letter dated February 27, 2014, as instructed by the Company.

39.     Defendants failed to notify Ms. Slack about her right to obtain her 100,000 shares of BTL stock in the Wyoming entity.

40.    Upon information and belief, Defendants could have easily located Ms. Slack's mailing address in Monona, Wisconsin, if they had made any effort to do so.

41.    As a result of Defendants' failure to notify Ms. Slack about her right to receive 100,000 shares of BTL stock in the Wyoming entity, Ms. Slack could not exchange her shares of BTL stock in Delaware for new shares in the Wyoming entity.

*Defendants Refuse to Reissue Stock from the Wyoming Entity to Ms. Haney,*
*Falsely Claiming that Ms. Haney Agreed to Cancel Her Stock Certificate in BTL*

42.    Though Ms. Haney returned a signed Affidavit of Lost Stock Certificate in accordance with the Company's instructions, Defendants failed to issue Ms. Haney any shares in the Wyoming entity. Despite Ms. Haney's demand that Defendants issue her an equal number of undiluted shares in the Wyoming entity, Defendants have refused to do so.

43.    Instead of reissuing Ms. Haney a stock certificate for 100,000 shares in the Wyoming entity, Mr. Rice, a Director of the Company at the time who was also acting as counsel to the Company, unbeknownst to Ms. Haney, falsely claimed that Ms. Haney verbally agreed to cancel or surrender her stock certificate in BTL.

44.    Specifically, in a memorandum dated March 13, 2014, Mr. Rice wrote:

> I spoke with Camille Haney about her stock. She acknowledged that she paid $0 cash for the stock and that she was willing to cancel/surrender her certificate, especially in lieu of her acknowledgement that the services performed initially have no value to BTL now.

Exhibit C, Memorandum by Shawn G. Rice, Esq., dated March 13, 2014.

45.    Ms. Haney did not have any such telephone call with Mr. Rice, nor did she agree to cancel or surrender her 100,000 shares in BTL for the reasons claimed by Mr. Rice or otherwise.

46. BTL has failed to provide Ms. Haney with any writing to support its claim that she agreed to cancel or surrender her shares, no such writing exists, and the claim is a patterned fraud.

47. Notably, Mr. Rice was suspended from the practice of law by the Wisconsin Supreme Court in 2017 for multiple instances of dishonesty. Because of Mr. Rice's disciplinary record, Defendants removed Mr. Rice from the Company's Board of Directors.

*Defendants Engage in a Coordinated Scheme to Dispossess the Company's Stockholders of Their Shares of BTL Common Stock in the Wyoming Entity*

48. Mses. Haney and Slack are not the only BTL stockholders who were deprived of their shares of BTL stock in the Wyoming entity.

49. James Hinz ("Mr. Hinz"), the founding BTL stockholder who recruited Mses. Haney and Slack to assist the Company in becoming operational, is deceased.

50. Based upon information and belief, Mr. Hinz held approximately 1,500,000 shares of BTL stock at the time of his death, such that the shares rightfully belonged to Mr. Hinz's estate.

51. On or around February 27, 2014, the date of Mr. Rice's letter instructing BTL's stockholders to exchange their Delaware shares for shares of BTL stock in the Wyoming entity, Stevan Schweighardt ("Mr. Schweighardt"), the Company's Chief Executive Officer and Chairman of the Board of Directors, told Mr. Rice: "As we discussed at this time, we are going to treat the Hinz shares as abandoned and it will be noted in the records as well that there was no value received for the shares by BTL." Exhibit D, Correspondence from Stevan Schweighardt to Shawn G. Rice, Esq., dated February 27, 2014.

8

52.    According to the testimony of Mr. Schweighardt in a related action by a stockholder against BTL, Mr. Hinz's estate has not received Mr. Hinz's shares of BTL stock in the Wyoming entity.

53.    Plaintiffs have recently learned that BTL has refused to issue a ratable potion of shares of BTL stock in Wyoming to several other stockholders who relinquished their shares of BTL stock in the Delaware entity in accordance with the Company's instructions.

54.    In addition to Ms. Haney, Ms. Slack, and Mr. Hinz, Defendants have failed to reissue shares of BTL stock in the Wyoming entity to the following shareholders:

     a.  Lawrence Kravetz;

     b.  James Dundon;

     c.  Clare Dundon;

     d.  Michael Timbers;

     e.  Li Quinn;

     f.  Lukang Xu;

     g.  Anne LaMarche;

     h.  Joan Daily;

     i.  Edward Taylor;

     j.  Cindi Bancroft as Trustee for Ryan Press Bancroft;

     k.  Cindi Bancroft as Trustee for Nicholas Jon; and

     l.  Gaffney Family, Limited Partnership.

55.    Defendants also refused to issue shares to Carrie Kravetz, Jonathan Kravetz, and Steven Brooks, until those individuals filed a lawsuit against the Company.

56. Along with the stockholders identified above in paragraphs 54 and 55, Defendants have targeted Mses. Haney and Slack as part of their coordinated scheme to deprive Plaintiffs, and others, of their respective shares of BTL stock in the Wyoming entity.

*BTL Stockholders File Lawsuits against the Company for Its Wrongful Withholding of Their Respective Shares of BTL Stock in the Wyoming Entity*

57. Several BTL stockholders have filed lawsuits against the Company on the basis that the Company has engaged in a pattern of wrongful conduct to deprive its stockholders of their respective shares of BTL stock in the Wyoming entity.

58. For example, BTL has refused to reissue shares of BTL stock in the Wyoming entity to Lawrence Kravetz, now deceased, and his two children, Jonathan and Carrie Kravetz (the "Kravetzes"). *See Kravetz, et al. v. Bridge to Life, LTD., a Wyoming Corporation, et al.*, Case No. 1:16-cv-09194 (N.D. Ill. Sept. 23, 2016) (the "Illinois Action").

59. In the Illinois Action, the Kravetzes allege that Lawrence Kravetz is a founding stockholder of BTL and continuously sought to raise capital and bring in investors for BTL, including by encouraging his family and friends to invest in the Company. In exchange, the Company issued to Lawrence Kravetz 1,200,000 shares of Common Stock in BTL over a five-year period. Lawrence Kravetz's brother, Norman Kravetz, purchased 20,000 shares of BTL Common Stock for Jonathan Kravetz and 20,000 shares of BTL Common Stock for Carrie Kravetz.

60. Though the Kravetzes returned their stock certificates in the Delaware entity in accordance with the Company's instructions, BTL initially refused to reissue stock certificates in the Wyoming entity on the false basis that the Delaware stock certificates were issued to the Kravetzes by "mistake" and that there was allegedly no consideration for Lawrence Kravetz's stock certificates.

61. In addition to refusing to issue stock certificates to the Kravetzes in 2014, BTL has been engaged in a nearly identical pattern of refusing to issue BTL stock in the Wyoming entity to other BTL stockholders by claiming a "mistake" in the issuance of BTL stock in the Delaware entity and a lack of consideration received by the Company years earlier.

62. This gave rise to another lawsuit (and eventual summary judgment) against the Company. The Gaffney Family Limited Partnership and ten individual plaintiffs ("Gaffney Plaintiffs") filed an action against BTL in Waukesha County Circuit Court in the State of Wisconsin, Case No. 2017CV000269 ("Wisconsin Action").

63. The Gaffney Plaintiffs alleged in the Wisconsin Action that they have been stockholders in BTL since 2005 when BTL purchased certain assets controlled by the Gaffney Family Limited Partnership and the Gaffney Plaintiffs received BTL stock as part of the transaction.

64. As the Kravetzes allege in the Illinois Action and as set forth herein, the Gaffney Plaintiffs, in the Wisconsin Action, explained that they received a letter in February 2014 from Mr. Rice instructing them to return their Delaware stock certificates in BTL so that new certificates could be issued in the Wyoming entity. After returning their Delaware stock certificates in BTL at various points in 2014, the Gaffney Plaintiffs wrote to Mr. Rice and requested issuance of their BTL stock in the Wyoming entity in February and May 2015.

65. Mr. Rice, at the time a Director of the Company, finally responded to the Gaffney Plaintiffs' request for issuance of stock certificates in the Wyoming entity on May 15, 2015, claiming for the first time in ten years that a certificate reflecting 625,000 shares of BTL stock issued to the Gaffney Plaintiffs in 2005 was a "mistake," and that no consideration was received by BTL for the 625,000 shares (the same position the Company is taking in the Illinois Action).

66.     After the Gaffney Plaintiffs provided documentation establishing that they had paid for all of their BTL stock and delivered the assets provided for in the transaction with BTL ten years earlier, the Company eventually refused to issue 625,000 shares in the Wyoming entity to the Gaffney Plaintiffs and claimed that BTL never received the promised consideration.

67.     On June 12, 2018, the court in the Wisconsin Action rejected BTL's claims and granted summary judgment to the Gaffney Plaintiffs, directing BTL to issue the disputed stock certificates in the Wyoming Action to the Gaffney Plaintiffs.  A copy of the Order dated June 12, 2018, in the Wisconsin Action is attached as Exhibit E.

68.     The Illinois Action is currently pending, and is progressing through discovery.

69.     Like the Kravetzes and the Gaffney Plaintiffs, Mses. Haney and Slack did not receive their respective shares of BTL stock in the Wyoming entity.

70.     To date, BTL has refused to issue Mses. Haney and Slack their respective shares of BTL stock in the Wyoming entity to which they are entitled.

## COUNT I
## CIVIL THEFT PURSUANT TO Wis. Stat. § 895.446
**(on behalf of Camille Haney and Barbara Slack against BTL and Mr. Schweighardt)**

71.     Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

72.     Ms. Haney is a resident of the State of Wisconsin and resided in Wisconsin at the time that BTL requested that she return her BTL stock certificates in the Delaware entity in exchange for BTL stock certificates in the Wyoming entity.

73.     Ms. Slack is a resident of the State of Wisconsin and has resided there at all times relevant to this dispute.

74.     Defendants have engaged in a pattern of misconduct directed at Plaintiffs in order to receive and withhold their movable property in the form of stock certificates embodying their respective 100,000 shares of BTL stock.

75.     Defendants intentionally used, transferred, or retained possession of Plaintiffs' property.

76.     Defendants sent correspondences to Ms. Haney in the State of Wisconsin as part of their scheme to receive and withhold 100,000 shares of BTL stock in the Wyoming entity.

77.     Defendants concealed from Ms. Slack her right to obtain shares of BTL stock in the Wyoming entity by failing to notify her about the redomestication in Wyoming or that she would be reissued shares in the Wyoming entity upon relinquishing her shares of BTL stock in Delaware.

78.     Each Plaintiff is the rightful owner of 100,000 shares of BTL stock in the Wyoming entity that Defendants have intentionally withheld.

79.     Plaintiffs did not consent to Defendants taking their shares of BTL stock.

80.     Defendants knew or had reason to know that Plaintiffs did not consent to the taking of their shares of BTL stock.

81.     Defendants intended to deprive Ms. Haney permanently of the possession of her shares of BTL stock.  To that end, Defendants falsely claimed that Ms. Haney verbally agreed to cancel or surrender her stock because of her supposed "acknowledgement that the services performed initially have no value to BTL now."  Ms. Haney has never made any such acknowledgment, nor has she agreed to the Defendants' taking of her BTL stock.

82.     Defendants intended to deprive Ms. Slack permanently of the possession of her shares of BTL Stock.  To that end, Defendants failed to notify Ms. Slack about the Company's

redomestication in Wyoming and her right to obtain the same number of shares of BTL stock in the Wyoming entity as she held in the Delaware entity.

83.     Upon information and belief, the number of Mr. Schweighardt's shares of BTL stock in the Company increased as a result of the Company taking Plaintiffs' stock.  Mr. Schweighardt therefore benefitted personally from withholding Plaintiffs' stock.

84.     Plaintiffs are entitled to a remedy under Wis. Stat. § 895.446 for Defendants' civil theft.

**COUNT II**
**BREACH OF CONTRACT**
**(on behalf of Camille Haney against BTL)**

85.     Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

86.     By letter dated February 27, 2014, BTL agreed to issue new stock certificates in the Wyoming entity in exchange for Ms. Haney returning a signed Affidavit of Lost Stock Certificate provided by the Company.

87.     Ms. Haney satisfactorily performed her obligations under the parties' agreement by returning a signed Affidavit of Lost Stock Certificate for her stock certificate for 100,000 shares of BTL stock in the Delaware entity, which had considerable value, in exchange for a corresponding number of shares of Common Stock in the redomesticated Wyoming entity.

88.     BTL was under a duty to provide Ms. Haney with a corresponding number of undiluted BTL Common Stock in the Wyoming entity pursuant to the agreement reflected in the letter dated February 27, 2014.

89.     BTL refused to reissue to Ms. Haney her full number of shares of undiluted BTL Common Stock in the Wyoming entity as per the agreement reflected in the letter dated February

27, 2014. To date, BTL has refused to issue *any* BTL stock to Ms. Haney in the Wyoming entity or otherwise attempt to rectify their breach of contract.

90. As a direct and proximate result of BTL's breach, Ms. Haney has suffered damages in an amount to be established at trial, including, without limitation, the value of the BTL shares of Common Stock that are owed to her, as well as the attorneys' fees and other costs incurred in connection with this action.

**COUNT III**
**PROMISSORY ESTOPPEL**
**(on behalf of Camille Haney against BTL and Mr. Schweighardt)**

91. Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

92. Mr. Rice, acting at the direction of Mr. Schweighardt, sent a letter to Ms. Haney dated February 27, 2014. The letter was sent on behalf of Defendants.

93. By instructing Mr. Rice to send the letter, Defendants obligated themselves to issue new Wyoming stock certificates to Ms. Haney upon her signing and returning the Affidavit of Lost Stock Certificate attached to the letter. *See* Exhibit B. Defendants promised Ms. Haney as follows: "Upon our receipt of the certificate(s) and/or Affidavit for all shares of common stock held by you, [BTL] will issue to you a new Wyoming stock certificate . . . ." *Id.* The foregoing statements were made in circumstances calculated to induce reliance, and Defendants could have reasonably expected Ms. Haney to take action in reliance thereon.

94. Defendants' promise induced Ms. Haney's reliance. Ms. Haney promptly signed and returned the Affidavit of Lost Stock Certificate as instructed by the Company.

15

95.     In surrendering her BTL stock certificate in the Delaware entity, Ms. Haney acted to her detriment in that she relinquished shares of substantial value, expecting to be restored to the same position by the Wyoming entity's issuance of new stock certificates.

96.     Injustice can be avoided only if Defendants' promise is enforced.

**COUNT IV**
**UNJUST ENRICHMENT**
**(on behalf of Camille Haney and Barbara Slack against BTL and Mr. Schweighardt)**

97.     Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

98.     Plaintiffs were recruited by Defendants to assist it in marketing efforts so that the Company would be able to operate as a going concern.

99.     Recognizing the value of Plaintiffs' services and as part of their compensation, Defendants issued 100,000 shares of BTL stock in the Delaware entity to each Plaintiff.

100.    By letter dated February 27, 2014, Defendants obligated themselves to issue new Wyoming stock certificates to Ms. Haney upon her signing and returning the Affidavit of Lost Stock Certificate attached to the letter.  *See* Exhibit B.  Defendants promised Ms. Haney as follows: "Upon our receipt of the certificate(s) and/or Affidavit for all shares of common stock held by you, [BTL] will issue to you a new Wyoming stock certificate . . . ."  *Id.*

101.    Ms. Haney signed and returned the Affidavit of Lost Stock Certificate to the Company.  The Company stock was valuable.

102.    Defendants solicited and accepted Ms. Haney's 100,000 shares of BTL stock in the Delaware entity in the form of an Affidavit of Lost Stock Certificate.   Under the circumstances, Defendants reasonably could have expected that Ms. Haney expected full value in return.  In fact, Defendants fostered such expectation by promising in the February 27, 2014,

letter, which Mr. Rice sent under Mr. Schweighardt's direction, that they would issue replacement stock.

103.    As a BTL stockholder, Ms. Slack was entitled to receive notice about the Company's redomestication in Wyoming and her right to receive new shares of BTL stock in the Wyoming entity.

104.    Defendants failed to notify Ms. Slack about her right to receive her shares of BTL stock in the Wyoming entity.  Instead, Defendants retained Ms. Slack's shares of BTL stock in the Wyoming entity.

105.    Upon information and belief, the number of Mr. Schweighardt's shares of BTL stock in the Company increased as a result of the Company taking Plaintiffs' stock.  Mr. Schweighardt therefore benefitted personally from withholding Plaintiffs' stock.

106.    BTL was also unjustly enriched from taking Plaintiffs' stock, including by issuing Plaintiffs' stock to the Company's directors, such as Mr. Schweighardt.

107.    Defendants have refused to reissue Plaintiffs' stock in BTL or otherwise compensate them for the reasonable value of their stock.  Defendants should not in good conscience retain this value without compensating Plaintiffs.

108.    As a direct and proximate result of Defendants' actions, equity and good conscience require that Defendants issue to Plaintiffs their respective shares of BTL stock in full and any additional amount due and payable to Plaintiffs in an amount to be established at trial.

**COUNT V**
**VIOLATION OF WISCONSIN SECURITIES LAWS – Wis. Stat. § 551.501**
(on behalf of Camille Haney against BTL and Mr. Schweighardt)

109.    Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

110.    Mr. Rice was acting at the direction of Mr. Schweighardt and the Company in sending Ms. Haney the letter dated February 27, 2014.  By instructing Mr. Rice to send the letter, Defendants made an offer to reissue shares of Wyoming stock to Ms. Haney, whether such offer was made directly or indirectly.

111.    Defendants' offer to reissue shares of BTL stock in the Wyoming entity in exchange for Ms. Haney's shares of BTL stock in the Delaware entity constitute an "offer" or "sale" of a security under Wis. Stat. § 551.501.

112.    By letter dated February 27, 2014, which was sent under Mr. Schweighardt's direction, Defendants made a false statement of material fact when they represented:  "Upon our receipt of the certificate(s) and/or Affidavit for all shares of common stock held by you, [BTL] will issue to you a new Wyoming stock certificate . . . ."

113.    Defendants knew prior to sending the February 27, 2014, letter, that they would not be issuing to Ms. Haney any BTL Common Stock in the Wyoming entity.  That is, Defendants never intended to exchange Ms. Haney's shares of stock at the time that they made their false statement of material fact.  This is evident from Defendants' pattern of soliciting shares of Delaware stock from the Company's shareholders and refusing to exchange such shares of stock on the false basis that such shares were issued by "mistake" or without consideration.

114.    Defendants could have reasonably expected Ms. Haney to take action in reliance on their false statement of material fact.

115.    Ms. Haney reasonably relied on Defendants' statement of material fact, thereby signing and returning the Affidavit of Lost Stock Certificate and returning 100,000 shares of BTL stock in the Delaware entity pursuant to Defendants' instruction.

18

116.    As a result of Ms. Haney's reasonable reliance on Defendants' representation of material fact, Ms. Haney has been dispossessed of her 100,000 shares of BTL stock.

117.    Defendants have refused to reissue Ms. Haney's shares of BTL stock in the Wyoming entity to date.

118.    Defendants employed a device, scheme, or artifice to defraud Ms. Haney through misrepresentations it set forth in the letter dated February 27, 2014.

119.    Defendants made an untrue statement of material fact in connection with their offer to reissue shares of BTL stock in the Wyoming entity upon receiving Ms. Haney's completed and signed Affidavit of Lost Stock Certificate for her 100,000 shares of BTL stock in the Delaware entity, which Ms. Haney sent to the Company pursuant to Defendants' instruction.

120.    Defendants' aforementioned acts operate or would operate as a fraud or deceit upon Ms. Haney.

121.    Accordingly, Defendants violated Wis. Stat. § 551.501, and their violation caused Ms. Haney to suffer damages in an amount to be determined.

## COUNT VI
## VIOLATION OF DELAWARE SECURITIES ACT – 6 Del. C. § 73-201
### (on behalf of Camille Haney against BTL and Mr. Schweighardt)

122.    Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

123.    Mr. Rice was acting at the direction of Mr. Schweighardt and the Company in sending Ms. Haney the letter dated February 27, 2014.  By instructing Mr. Rice to send the letter, Defendants made an offer to reissue shares of Wyoming stock to Ms. Haney, whether such offer was made directly or indirectly.

124.     Defendants' offer to reissue shares of BTL stock in the Wyoming entity in exchange for Ms. Haney's shares of BTL stock in the Delaware entity constitutes an "offer" or "sale" of a security under 6 Del. C. § 73-201.

125.     By letter dated February 27, 2014, which was sent under Mr. Schweighardt's direction, Defendants made a false statement of material fact when they represented:  "Upon our receipt of the certificate(s) and/or Affidavit for all shares of common stock held by you, [BTL] will issue to you a new Wyoming stock certificate . . . ."

126.     Defendants knew prior to sending the February 27, 2014, letter, that they would not be issuing to Ms. Haney any BTL Common Stock in the Wyoming entity.  That is, Defendants never intended to exchange Ms. Haney's shares of stock at the time that they made their false statement of material fact.  This is evident from Defendants' pattern of soliciting shares of Delaware stock from the Company's shareholders and refusing to exchange such shares of stock on the false basis that such shares were issued by "mistake" or without consideration.

127.     Defendants could have reasonably expected Ms. Haney to take action in reliance on their false statement of material fact.

128.     Ms. Haney reasonably relied on Defendants' statement of material fact, thereby signing and returning the Affidavit of Lost Stock Certificate and returning 100,000 shares of BTL stock in the Delaware entity pursuant to Defendants' instruction.

129.     As a result of Ms. Haney's reasonable reliance on Defendants' representation of material fact, Ms. Haney has been dispossessed of her 100,000 shares of BTL stock.

130.     Defendants have refused to reissue Ms. Haney's shares of BTL stock in the Wyoming entity to date.

131.    Defendants employed a device, scheme, or artifice to defraud Ms. Haney through misrepresentations it set forth in the letter dated February 27, 2014.

132.    Defendants made an untrue statement of material fact in connection with their offer to reissue shares of BTL stock in the Wyoming entity upon receiving Ms. Haney's completed and signed Affidavit of Lost Stock Certificate for her 100,000 shares of BTL stock in the Delaware entity, which Ms. Haney sent to the Company pursuant to Defendants' instruction.

133.    Defendants' aforementioned acts operate or would operate as a fraud or deceit upon Ms. Haney.

134.    Accordingly, Defendants violated 6 Del. C. § 73-201, and their violation caused Ms. Haney to suffer damages in an amount to be determined at trial.

## COUNT VII
## VIOLATION OF WYOMING UNIFORM SECURITIES ACT – Wyo. Stat. Title 17, Ch. 4
### (on behalf of Camille Haney against BTL and Mr. Schweighardt)

135.    Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

136.    Mr. Rice was acting at the direction of Mr. Schweighardt and the Company in sending Ms. Haney the letter dated February 27, 2014.  By instructing Mr. Rice to send the letter, Defendants made an offer to reissue shares of Wyoming stock to Ms. Haney, whether such offer was made directly or indirectly.

137.    Defendants' offer to reissue shares of BTL stock in the Wyoming entity in exchange for Ms. Haney's shares of BTL stock in the Delaware entity constitutes an "offer" or "sale" of a security under Wyo. Stat. § 17-4-501.

138.    By letter dated February 27, 2014, which was sent under Mr. Schweighardt's direction, Defendants made a false statement of material fact when they represented:  "Upon our

21

receipt of the certificate(s) and/or Affidavit for all shares of common stock held by you, [BTL] will issue to you a new Wyoming stock certificate . . . ."

139.    Defendants knew prior to sending the February 27, 2014, letter, that they would not be issuing to Ms. Haney any BTL Common Stock in the Wyoming entity.  That is, Defendants never intended to exchange Ms. Haney's shares of stock at the time that they made their false statement of material fact.  This is evident from Defendants' pattern of soliciting shares of Delaware stock from the Company's shareholders and refusing to exchange such shares of stock on the false basis that such shares were issued by "mistake" or without consideration.

140.    Defendants could have reasonably expected Ms. Haney to take action in reliance on their false statement of material fact.

141.    Ms. Haney reasonably relied on Defendants' statement of material fact, thereby signing and returning the Affidavit of Lost Stock Certificate and returning 100,000 shares of BTL stock in the Delaware entity pursuant to Defendants' instruction.

142.    As a result of Ms. Haney's reasonable reliance on Defendants' representation of material fact, Ms. Haney has been dispossessed of her 100,000 shares of BTL stock.

143.    Defendants have refused to reissue Ms. Haney's shares of BTL stock in the Wyoming entity to date.

144.    Defendants employed a device, scheme, or artifice to defraud Ms. Haney through misrepresentations it set forth in the letter dated February 27, 2014.

145.    Defendants made an untrue statement of material fact in connection with their offer to reissue shares of BTL stock in the Wyoming entity upon receiving Ms. Haney's completed and signed Affidavit of Lost Stock Certificate for her 100,000 shares of BTL stock in the Delaware entity, which Ms. Haney sent to the Company pursuant to Defendants' instruction.

146.    Defendants' aforementioned acts operate or would operate as a fraud or deceit upon Ms. Haney.

147.    Accordingly, Defendants violated Wyo. Stat. § 17-4-501, and their violation caused Ms. Haney to suffer damages in an amount to be determined at trial.

**COUNT VIII**
**VIOLATION OF THE SECURITIES ACT OF 1933 – 15 U.S.C. § 77a**
**(on behalf of Camille Haney against BTL and Mr. Schweighardt)**

148.    Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

149.    The Securities Act of 1933 prohibits, in connection with the offer or sale of any securities the use any instrument of transportation or communication in interstate commerce to "(1) employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q (a).

150.    Mr. Rice was acting at the direction of Mr. Schweighardt and the Company in sending Ms. Haney the letter dated February 27, 2014. By instructing Mr. Rice to send the letter, Defendants made an offer to reissue shares of Wyoming stock to Ms. Haney, whether such offer was made directly or indirectly.

151.    Defendants' offer to reissue shares of BTL stock in the Wyoming entity in exchange for Ms. Haney's shares of BTL stock in the Delaware entity constitutes an "offer" or "sale" of a security under 6 Del. C. § 73-201.

Case: 1:18-cv-05417 Document #: 1 Filed: 08/09/18 Page 24 of 27 PageID #:24

152.    At all relevant times, Defendants used "means or instruments of transportation or communication in interstate commerce" in transmitting the offer.  15 U.S.C. § 77l(a)(2).

153.    By letter dated February 27, 2014, which was sent under Mr. Schweighardt's direction, Defendants made a false statement of material fact when they represented:  "Upon our receipt of the certificate(s) and/or Affidavit for all shares of common stock held by you, [BTL] will issue to you a new Wyoming stock certificate . . . ." *See* Exhibit B, Letter from Shawn G. Rice, Esq., dated February 27, 2014.

154.    Defendants knew prior to sending the February 27, 2014, letter, that they would not be issuing to Ms. Haney any BTL Common Stock in the Wyoming entity.  That is, Defendants never intended to exchange Ms. Haney's shares of stock at the time that they made their false statement of material fact.  This is evident from Defendants' pattern of soliciting shares of Delaware stock from the Company's shareholders and refusing to exchange such shares of stock on the false basis that such shares were issued by "mistake" or without consideration.

155.    Defendants could have reasonably expected Ms. Haney to take action in reliance on their false statement of material fact.

156.    Ms. Haney reasonably relied on Defendants' statement of material fact, thereby signing and returning the Affidavit of Lost Stock Certificate and returning 100,000 shares of BTL stock in the Delaware entity pursuant to Defendants' instruction.

157.    As a result of Ms. Haney's reasonable reliance on Defendants' representation of material fact, Ms. Haney has been dispossessed of her 100,000 shares of BTL stock.

158.    Defendants have refused to reissue Ms. Haney's shares of BTL stock in the Wyoming entity to date.

24

159.    Defendants employed a device, scheme, or artifice to defraud Ms. Haney through misrepresentations it set forth in the letter dated February 27, 2014.

160.    Defendants made an untrue statement of material fact in connection with their offer to reissue shares of BTL stock in the Wyoming entity upon receiving Ms. Haney's completed and signed Affidavit of Lost Stock Certificate for her 100,000 shares of BTL stock in the Delaware entity, which Ms. Haney sent to the Company pursuant to Defendants' instruction.

161.    Defendants' aforementioned acts operate or would operate as a fraud or deceit upon Ms. Haney.

162.    As a proximate result of Defendants' statutory violations, Ms. Haney has suffered damages in an amount to be determined at trial.

<u>**COUNT IX**</u>
<u>**VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 – 15 U.S.C. § 78j**</u>
**(on behalf of Camille Haney against BTL and Mr. Schweighardt)**

163.    Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

164.    Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 of the Securities Exchange Commission, 17 C.F.R. 240.10b-5, prohibit the fraudulent sale of any security.  Rule 10(b)(5) makes it unlawful to defraud someone, to make any untrue statement of material fact, or to engage in any act or practice which is a fraud or deceit in connection with the sale of a security.

165.    As a proximate result of Defendants' statutory violations, based on the acts and omissions described above, Ms. Haney has suffered damages in an amount to be determined at trial.

## COUNT X
## DECLARATORY JUDGMENT
**(on behalf of Camille Haney and Barbara Slack against BTL and Mr. Schweighardt)**

166.    Plaintiffs incorporate the preceding paragraphs of the Complaint in their entirety as if specifically alleged herein.

167.    Plaintiffs' surrender of their BTL stock certificates in the Delaware corporation created a binding agreement between Plaintiffs and Defendants for the issuance of Plaintiffs' stock certificates in the Wyoming corporation in full.

168.    A justiciable controversy exists as to whether Defendants must issue to Plaintiffs the full number of their shares of Common Stock in the Company.

169.    Plaintiffs have an interest in the declaratory judgment because they are shareholders of the Company.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Camille Haney and Barbara Slack respectfully request that the Court grant them the following relief:

1.      That judgment be entered for Plaintiffs on their claims against Defendants for damages, treble damages, penalties, interest, costs and attorneys' fees.

2.      That the Court enter an Order declaring that Ms. Haney is entitled to 100,000 shares of BTL Common Stock and that Ms. Slack is entitled to 100,000 shares of BTL Common Stock.

3.      That the Court enter judgment against Defendants ordering them to tender 100,000 shares of BTL Common Stock to Ms. Haney and 100,000 shares of BTL Common Stock to Ms. Slack, without dilution of Plaintiffs' percentage ownership interest in the Company prior to its redomestication in Wyoming.

4.      That attorneys' fees be assessed against Defendants.

5.      That the Court grant Plaintiffs such other and further relief as it considers just and

proper, including prejudgment interest.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury on all claims so triable.


                              Respectfully submitted,

                              **CAMILLE HANEY and
                              BARBARA SLACK**


        By:     /s/ Paul A. Ruscheinski
                Paul A. Ruscheinski [#6279731]
                Thomas M. Crawford [#6210832]
                Litchfield Cavo LLP
                303 W. Madison St., Suite 300
                Chicago, IL 60606
                (312) 781-6602 (Ruscheinski)
                (312) 781-6679 (Crawford)
                (312) 781-6630 fax
                Email: Ruscheinski@litchfieldcavo.com
                        Crawford@litchfieldcavo.com

                Colin R. Hagan
                James P. McEvilly, III
                Shlansky Law Group, LLP
                1 Winnisimmet Street
                Chelsea, MA 02150
                Telephone: (617) 370-8321
                Facsimile:  (866) 257-9530
                Email: Colin.Hagan@slglawfirm.com
                        James.McEvilly@slglawfirm.com

                *Attorneys for Plaintiffs*

Dated: August 9, 2018