# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAMILLE HANEY and BARBARA SLACK, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) Case No. 18 CV 5417 <br> ) |
| BRIDGE TO LIFE, LTD., a Wyoming corporation, and STEVAN F. SCHWEIGHARDT, | ) Judge Joan H. Lefkow <br> ) <br> ) <br> ) |
| Defendants. | ) |

## OPINION AND ORDER

Camille Haney and Barbara Slack have sued the Wyoming corporation Bridge to Life Ltd. and its CEO and chairman Stevan Schweidghardt. Haney and Slack claim under several theories that they were deprived of their rights to shares in Bridge to Life after the corporation redomesticated from Delaware to Wyoming. The defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 19.) Defendants' motion to dismiss is granted in part and denied in part. The motion is granted without prejudice as to Slack's civil theft claim (count I) and denied as to Haney's civil theft claim (count I) and counts V, VII, and IX. Counts VI and VIII have been voluntarily withdrawn under Rule 15(a)(2).[1]

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), and venue is appropriate under 28 U.S.C. § 1391(b).

**BACKGROUND**[2]

Incorporated in Delaware in 2005, Bridge to Life is a medical supply company focused on devices to assist with organ transplants. (Dkt. 1 ¶¶ 22–23.) In its early days, Bridge to Life recruited Haney and Slack to help raise awareness about its mission. (*Id.* ¶ 26.) In exchange for their help, Haney and Slack were each given 100,000 shares of Bridge to Life common stock. (*Id.* ¶ 31.) They allege that each share is worth about $4. (*Id.* ¶ 21.)

In February 2014, Bridge to Life redomesticated to Wyoming. At Schweighardt's direction, Bridge to Life sent a letter to all Delaware shareholders asking them to send in their Delaware stock certificate(s) or an affidavit of lost stock certificate(s) and promising that "[u]pon our receipt of the certificate(s) and/or Affidavit for all shares of common stock held by you, we will issue to you a new Wyoming stock certificate . . . ." (*Id.* ¶ 37.) Slack did not receive the letter and claims that it was at least negligently withheld from her. (*Id.* ¶¶ 39–40.)

Haney received the letter but was unable to locate her stock certificates. (*Id.* ¶ 38.) As requested, in April 2014,[3] she sent Bridge to Life an affidavit of lost stock certificate. (*Id.* ¶¶ 11–12.) By signing the affidavit, Haney essentially foreswore her rights to the underlying Delaware stock certificates. (Dkt. 1-2 at 4.) Despite receiving the affidavit, Bridge to Life did not issue Haney any Wyoming shares and still has not. Unbeknownst to Haney, a director of the company created an internal memorandum in March 2014 stating that Haney agreed over the phone to "cancel/surrender her certificate" because the services she provided to Bridge to Life had no

---

[2] Unless otherwise noted, the following facts are taken from Haney and Slack's complaint (dkt. 1) and are presumed true for this motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

[3] Haney alleges returning her affidavit "approximately one month later," though later than what is unclear. (Dkt. 1 ¶ 12.) Construed in the light most favorable to Haney, "later" meant April 2014, a month later than the March 2014 memorandum described below. (*Id.*)

present value. (Dkt. 1 ¶ 44.) Haney had not so agreed, nor had she spoken with that director. (*Id.* ¶ 45.)

Several other Delaware shareholders encountered similar difficulties obtaining Wyoming shares. (*Id.* ¶ 48.) Bridge to Life decided to treat 1,500,000 shares belonging to a former shareholder's estate as abandoned. (*Id.* ¶ 51.) Others returned their Delaware share certificates but were not issued Wyoming shares. (*Id.* ¶ 53–55.) In some cases, after accepting the return of Delaware shares, Bridge to Life claimed that those shareholders were never supposed to have had shares in the first place and refused to issue Wyoming shares. (*Id.* ¶ 61.)

Most relevant here are Lawrence Kravetz, another founding shareholder who held 1,200,000 Delaware shares, and his children Jonathan and Carrie Kravetz, who held 20,000 Delaware shares apiece. (*Id.* ¶ 59.) The Kravetzes returned their Delaware certificates to Bridge to Life but were not initially issued Wyoming certificates in return. (*Id.* ¶¶ 60–61.) Their related suit against Bridge to Life is pending before this court. *Kravetz* v. *Bridge to Life*, No. 16 CV 9194 (N.D. Ill.). Before filing in this court in 2016, the Kravetzes unsuccessfully sued Bridge to Life for securities fraud, among other things, in Delaware Chancery Court in December 2015. *See* Opinion and Order, dkt. 37 at 4, *Kravetz* v. *Bridge to Life*, No. 16 CV 9194 (N.D. Ill. Aug. 18, 2017); *see also* dkt. 21-1 at 20–21, *Kravetz* v. *Bridge to Life*, No. 16 CV 9194 (copy of 2015 Delaware securities fraud count).

In August 2018, Haney and Slack filed this suit against Bridge to Life and Schweighardt under several theories. Defendants answered Haney's breach of contract claim against Bridge to Life (count II), Haney's promissory estoppel claim against both defendants (count III), both plaintiffs' unjust enrichment claim against both defendants (count IV), and both plaintiffs' declaratory judgment claim against both defendants (count X). Haney and Slack have voluntarily

3

withdrawn two more claims: securities fraud under Delaware law (count VI) and federal securities fraud under § 17(a) of the Securities Act of 1933 (count VIII). (Dkt. 25 at 3–4 n.1.) Defendants move to dismiss the remaining claims: Wisconsin civil theft (count I), Wisconsin securities fraud (count V), Wyoming securities fraud (count VII), and federal securities fraud under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (count IX). (Dkt. 19.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim on which relief may be granted. In ruling on such a motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

## ANALYSIS

### I. Civil Theft (Count I)

Wisconsin law creates a private right of action for victims of theft. Wis. Stat. § 895.446(1). Wisconsin defines five forms of theft; the two relevant here are when a defendant,

> (b) By virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or

4

writing without the owner's consent, contrary to his or her authority, and with
intent to convert to his or her own use or to the use of any other person except the
owner. A refusal to deliver any money or a negotiable security, instrument, paper
or other negotiable writing, which is in his or her possession or custody by virtue
of his or her office, business or employment, or as trustee or bailee, upon demand
of the person entitled to receive it, or as required by law, is prima facie evidence
of an intent to convert to his or her own use within the meaning of this paragraph.

. . .

(d) Obtains title to property of another person by intentionally deceiving the
person with a false representation which is known to be false, made with intent to
defraud, and which does defraud the person to whom it is made. "False
representation" includes a promise made with intent not to perform it if it is a part
of a false and fraudulent scheme.

Wis. Stat. § 943.20(1). "Movable property" is defined to include "documents which represent or embody intangible rights," Wis. Stat. § 943.20(2)(ag), and "Property" means "tangible property," including "documents which represent or embody a chose in action or other intangible rights," Wis. Stat. § 943.20(2)(b).

Slack does not state a claim for civil theft because nothing tangible was taken or withheld from her. Slack did not receive the redomestication letter and did not send anything to Bridge to Life in exchange for new shares. She instead claims that Bridge to Life and Schweighardt deprived her of her intangible right to exchange Delaware share certificates for Wyoming share certificates. But neither "movable property" nor "property" encompasses that intangible right. The complaint could be read to claim that either the February 2014 letter or her Wyoming share certificates were hidden or withheld, but neither can form the basis of a claim. Because the letter was not Slack's property, Bridge to Life and Schweighardt could not have stolen it from her. Nor were the Wyoming share certificates Slack's property; to the contrary, she specifically alleges that she was deprived the opportunity to own those shares. Bridge to Life cannot steal from Slack items that do not belong to her.

5

Haney, on the other hand, states a claim for theft of her Wyoming share certificates under Wis. Stat. §§ 943.20(1)(b). She alleges that she submitted an affidavit of lost stock certificate, thereby both vesting her right to Wyoming shares and demanding their return. Bridge to Life refused to deliver those shares to her despite her demand, which the statute establishes as prima facie evidence of intent to convert. § 943.20(1)(b). Haney has therefore plausibly claimed that Bridge to Life and Schweighardt, "having possession or custody of . . . a negotiable security, . . . intentionally . . . retain[ed] possession of such . . . security . . . without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use . . . ." *Id.*

Bridge to Life counters that Haney has not alleged that her Wyoming share certificates exist, but although Wisconsin law requires that the property be tangible, it does not require that it be specially earmarked. For instance, in *Hartland Lakeside Joint No. 3 Sch. Dist.* v. *WEA Ins. Corp.*, No. 12-C-154, 2012 WL 12929551 (E.D. Wis. July 27, 2012), a federal program created funds to reimburse "plan sponsors" for paying retiree health benefits. *Id.* at 1. The defendant insurance company submitted forms to obtain those funds for the benefit of the plaintiff school districts, who were the "plan sponsors." *Id.* at *1–2. But the insurance company wrongly claimed that it was the plan sponsor and refused to give the funds to the districts unless they agreed to renew their insurance policies. *Id.* at *2. Even though the school districts had never seen the funds and could not identify which funds or tangible evidence of funds belonged to them, the court held that they stated a claim for civil theft. *Id.* at *5. The same is true here. Haney plausibly alleges that she owned Wyoming Bridge to Life shares that Bridge to Life withheld from her. She need not point to the shares or identify which certificate embodies her right to them.

Defendants cite *Aslanukov* v. *American Express Travel Related Services Co.*, 426 F. Supp. 2d 888 (W.D. Wis. 2006), but that case is distinguishable. There, Aslanukov purchased

6

travelers' checks from American Express that were later stolen. *Id.* at 888–89. After American Express refused his request for a refund, he sued for civil theft, claiming American Express had stolen the money he paid in exchange for the travelers' checks. *Id.* at 889. The court held that because American Express owned, rather than possessed, the money it received from Aslanukov, Aslanukov had no property for American Express to steal. *Id.* at 893; *see also Wisconsin Masons Health Care Fund* v. *Sid's Sealants, LLC*, 17-cv-28-jdp, 2017 WL 3835343, at *2 (W.D. Wis. Aug. 31, 2017) ("When one party transfers money to a second party to complete a transaction or purchase, the first party does not 'entrust' its money to the second; the second party 'obtains ownership' of the money." (brackets removed)). *Aslanukov* supports the conclusions here: Slack does not plausibly allege theft because she did not own anything alleged to be stolen; Haney does because she plausibly claims to own the Wyoming shares.

The motion to dismiss count I is denied as to Haney and granted as to Slack without prejudice.

## II. Securities Fraud (Counts V, VII, and IX)

### A. Timeliness

Haney alleges that Bridge to Life and Schweighardt committed securities fraud under Wisconsin, Wyoming, and federal law. All three statutes require Haney to file within the earlier of two years of discovering the fraud or five years of the fraud occurring. 28 U.S.C. § 1658(b) (claims must be filed "not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation"); Wis. Stat. § 551.509(10)(b) (claim must be filed "within the earlier of 2 years after discovery of the facts constituting the violation or 5 years after the violation"); Wyo. Stat. Ann. § 17-4-509(k)(ii) (claims must be filed "within the earlier of two (2) years after discovery of the facts constituting the violation or five (5) years

7

after the violation"). The five-year periods are statutes of repose, which cut off any cause of action five years after the fraud occurred, even if Haney had not by that point discovered the fraud or suffered any injury. *McCann* v. *Hy-Vee, Inc.*, 663 F.3d 926, 930–31 (7th Cir. 2011). Filing within the statutes of repose, as Haney has done, is necessary but insufficient to show that the claims are timely.

The two-year limitations periods run "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first." *Merck & Co.* v. *Reynolds*, 559 U.S. 633, 637, 130 S. Ct. 1784 (2010); *see also John Doe 1* v. *Archdiocese of Milwaukee*, 734 N.W.2d 827, 843 (Wis. 2007) (interpreting "discovery" similarly in statute of limitations for common-law fraud); *Robert L. Kroenlein Tr. ex rel. Alden* v. *Kirchhefer*, 357 P.3d 1118, 1128 (Wyo. 2015) (same).[4] The facts constituting the violation include the fact of Bridge to Life's deceptive intent. *Merck*, 559 U.S. at 648–49. Haney filed this complaint on August 9, 2018; for the complaint to be timely, the limitations periods must have started running on August 9, 2016 at the latest.

Haney argues that the clocks began running from actual discovery in 2018. Bridge to Life appears to argue that the clocks began running in 2014, right after Haney returned her affidavit of lost stock certificate. The truth lies somewhere in between. The limitations periods run from the earlier of when Haney discovered the fraud or when a reasonably diligent plaintiff would have discovered the fraud. The latter is earlier in this case. But although the court can conclude that a reasonably diligent plaintiff who disclaimed her rights to $400,000 worth of stock and received nothing in return would have noticed something amiss in less than four-and-a-half

---

[4] Although the parties do not cite, and the court has not found cases interpreting the meaning of "discovery" in the Wisconsin and Wyoming securities-fraud statutes of limitations, there is no reason to believe that they are interpreted differently than those states' common-law fraud statutes of limitations or the similarly-worded federal statute of limitations.

years, how much earlier is a question of fact that cannot be resolved on this record. *Marks* v. *CDW Computer Ctrs., Inc.*, 122 F.3d 363, 368–69 (7th Cir. 1997).

The court notes that the Kravetzes sued Bridge to Life for securities fraud as early as December 2015, undercutting Haney's claim that no one exercising reasonable diligence could have uncovered securities fraud before she did in August 2018. (*See* dkt. 21-1 at 20–21, *Kravetz* v. *Bridge to Life*, No. 16 CV 9194 (2015 Delaware securities fraud claim).) But there are still outstanding fact questions: Did Haney encounter the same suspicious circumstances as the Kravetzes? Did the Kravetzes exercise extraordinary rather than reasonable diligence? Did the Kravetzes' lawsuit receive media coverage, such that a reasonably diligent shareholder could have used their lawsuit to discover Bridge to Life's purported fraud? Did Haney inquire after her Wyoming shares in any way? These questions prevent the court from dismissing the securities fraud claims as untimely at this phase, though the court may ultimately do so after the record is developed.

### B. Merits of Securities Fraud Claims

Section 10(b) of the Securities Exchange Act of 1934 and its implementing regulation, Rule 10b-5, confer a private right of action for fraud in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. To state a claim, Haney must plausibly allege the following: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . .; (5) economic loss; and (6) 'loss causation,' *i.e.*, a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 341, 125 S. Ct. 1627 (2005) (internal citations omitted). The similarly-worded Wisconsin and Wyoming

securities fraud statutes contain analogous elements, with pertinent differences described below. Wis. Stat. § 551.501; Wyo. Stat. § 17-4-501.

### 1. Purchase or Sale

Bridge to Life argues that an exchange of securities is not a purchase or sale of securities, barring relief under Rule 10b-5. At the outset, although Section 10(b) of the Securities Exchange Act and Rule 10b-5 concern only fraud in connection with the "purchase" or "sale" of securities, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5, the Wisconsin and Wyoming statutes also cover fraud in connection with an "offer" of securities. Wis. Stat. § 551.501 ("in connection with the offer, sale, or purchase of a security"); Wyo. Stat. § 17-4-501 (same). Because Bridge to Life "offered" securities to Haney in its letter, Haney states a claim under the Wisconsin and Wyoming claims even if there was no "purchase" or "sale" of stock.

There was a sale, in any event. The federal statute defines "purchase" and "sale" broadly, encompassing "an acquisition or disposition of securities in exchange for other securities . . . ." *Dasho* v. *Susquehanna Corp.*, 380 F.2d 262, 266 (7th Cir. 1967); *see also SEC* v. *Nat'l Sec., Inc.*, 393 U.S. 453, 467, 89 S. Ct. 564 (1969) ("[W]e conclude that . . . shareholders 'purchased' shares in the new company by exchanging them for their old stock."). Here, Haney delivered her affidavit of lost stock certificate to Bridge to Life, disclaiming rights to her Delaware stock and thereby "selling" her shares to Bridge to Life under the broad federal definition. Although the parties cite no caselaw interpreting "sale" under the Wisconsin or Wyoming laws, there is no reason to believe that their definitions of "sale" are narrower (or broader).

Bridge to Life responds that an exchange of shares only counts as a "purchase" or "sale" when the shares exchanged belong to substantively different companies. It emphasizes the SEC's Rule 145, which exempts "transaction[s] . . . to change an issuer's domicile solely within the

10

United States" from registration requirements under the Securities Act of 1933. 17 C.F.R. § 230.145(a)(2). But "transactions that are exempt from registration requirements under the federal securities laws are still subject to the anti-fraud provisions of the 1933 and 1934 Acts and Rule 10b-5." *Marks* v. *CDW Computer Ctrs., Inc.*, 901 F. Supp. 1302, 1311 (N.D. Ill. 1995) (citing 15 U.S.C. § 77q(c) and *Gould* v. *Ruefenacht*, 470 U.S. 701, 105 S. Ct. 2308 (1985)).

Bridge to Life also cites out-of-circuit district court cases holding that internal corporate reorganizations are not "purchases" or "sales" under Rule 10b-5. *E.g.*, *Goldberg* v. *Hankin*, 835 F. Supp. 815, 817 (E.D. Penn. 1993) (citing *In re Penn Central Sec. Litig.*, 494 F.2d 528, 538 (3d Cir. 1974)). In *Goldberg*, shareholders of a bank believed the bank overstated its performance. *Id.* at 816–17. But the shareholders obtained their shares many years before the overstatements and were not fraudulently induced to buy their shares; they were simply unhappy, as shareholders, with the bank's performance. To convert their dissatisfaction into a Rule 10b-5 claim, the plaintiffs argued that they became "purchasers" when their bank shares were converted to equal holding company shares in a corporate reorganization. The court held that the shareholders were not "purchasers" simply because their shares had been converted. *Id.* at 817–18. But unlike *Goldberg*, Haney alleges fraud connected to the exchange of shares itself: she claims that Bridge to Life induced her to give up Delaware securities based on the false promise of giving her Wyoming securities in return. Thus, unlike the plaintiffs in *Goldberg*, Haney "sold" her Delaware securities and may sue under Rule 10b-5.

### 2. Intent

Bridge to Life next argues that Haney has not sufficiently alleged fraud under the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b)(1)–(2).[5] The PSLRA requires

---

[5] The PSLRA applies to "any private action arising under this chapter [Chapter 2B of Title 15 of the U.S. Code]," which does not cover Wisconsin and Wyoming law. 15 U.S.C. § 78u-4(b). Still, Haney

Haney to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* Haney meets this standard. She alleges that Bridge to Life's February 2014 letter promised to issue Wyoming shares when she sent in her affidavit of lost stock certificate, which was misleading because Bridge to Life did not intend to issue Wyoming shares. She also alleges facts supporting a strong inference of intent to defraud, as this was part of a widespread pattern. She also alleges that Bridge to Life generated a suspicious memorandum claiming that Haney agreed to relinquish her 100,000 shares (worth $400,000) during a phone call that never took place. Bridge to Life responds that the memorandum confirms its good faith, but it is reasonable to infer that a corporation should view with suspicion a memorandum claiming that a shareholder voluntarily relinquished a $400,000 equity position because she considered her own services worthless. Finally, the motive to take away shares from shareholders is a matter of arithmetic; when some shares are retired, the outstanding shares become more valuable.

### 3. Damages

Finally, Bridge to Life argues that Haney has not alleged damages because she does not specify the dollar amount she suffered. Haney alleges that she was tricked into giving up 100,000 of Delaware stock valued at about $4 per share, clear damages. Bridge to Life asserts that Haney has not proven how the stock price was manipulated, but she has; she claims that Bridge to Life convinced her to sell her Delaware shares at the price of an equal value of Wyoming shares when the price she fetched (and Bridge to Life allegedly intended to pay all along) was zero.

---

must allege any fraud, including state-law fraud, with particularity under Federal Rule of Civil Procedure 9(b). *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.* v. *Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). As Haney meets both standards, the court need not dwell on the difference.

The motion to dismiss is therefore denied as to counts V, VII, and IX.

## ORDER

Bridge to Life Ltd.'s motion to dismiss (dkt. 19) is granted without prejudice as to Slack's portion of count I and denied as to counts V, VII, and IX, and Haney's portion of count I.

Date: March 8, 2019

_____
U.S. District Judge Joan H. Lefkow