# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAMILLE HANEY and BARBARA SLACK, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 18 CV 5417 ) |
| BRIDGE TO LIFE, LTD., a Wyoming corporation, and STEVAN F. SCHWEIGHARDT, | ) Judge Joan H. Lefkow ) ) ) |
| Defendants. | ) |

Camille Haney and Barbara Slack, both shareholders in Bridge to Life, Ltd., sued Bridge to Life for failing to issue them Wyoming share certificates when it redomesticated from Delaware to Wyoming. Bridge to Life moves for summary judgment on all counts that have not already been dismissed or withdrawn. (*See* dkt. 37 at 13.) The motion (dkt. 51) is granted.[1]

## STATEMENT OF FACTS[2]

Incorporated in Delaware in 2005, Bridge to Life is a medical supply company that develops, manufactures and sells organ transplant solutions in the United States. (Dkt. 58 ¶ 1.) Soon after its founding, Bridge to Life engaged Camille Haney and Barbara Slack to promote Bridge to Life at a conference and connect it with influential people in the healthcare field. (Dkt.

---

[1] This court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b)(2).

[2] Unless otherwise noted, the facts set out below are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Following its regular practice, the court has considered the parties' objections to the statements of facts and includes in its opinion only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

65 ¶¶ 1–4.)[3] In 2006, Bridge to Life issued 100,000 shares to plaintiffs Camille Haney and Barbara Slack. (Dkt. 58 at ¶¶ 4–5; dkt. 65 ¶ 6.) (The parties dispute whether these shares were meant as compensation for Haney and Slack's establishing a nonprofit organization in connection with Bridge to Life that never materialized, but the dispute is not material here) (Dkt. 58 ¶¶ 4–9; dkt. 65 ¶¶ 5–8.)

In 2014, Bridge to Life redomesticated from Delaware to Wyoming after receiving board and shareholder approval. (Dkt. 58 ¶ 12.) In a letter dated February 27, 2014, Bridge to Life informed shareholders of its redomestication and requested that they return either their Delaware stock certificates or an Affidavit of Lost Stock Certificate so that Bridge to Life could "collect and retire all outstanding and issued Delaware certificates." (*Id.* ¶ 17.) Haney received the letter. (*Id.* ¶ 20). Soon afterwards, she had a telephone conversation with Bridge to Life's corporate secretary, Shawn Rice, after which Bridge to Life believed that Haney had voluntarily agreed to cancel her shares and Haney believed that Bridge to Life was going to issue her a new Wyoming share certificate. (Dkt. 58 ¶¶ 22, 23.)[4] On April 8, 2014, Haney sent Bridge to Life an un-notarized Affidavit of Lost Stock Certificate because she no longer had the physical Delaware share certificate. (*Id.* ¶ 21.) Haney never received a Bridge to Life Wyoming certificate in return and never contacted Bridge to Life about the missing certificate until nine days before this

---

[3] Many of Bridge to Life's responses to the plaintiffs' statement of additional facts were improper, admitting the substance of the statements but nonetheless making long, argumentative denials and objections. (*E.g.*, dkt. 65 ¶ 23 ("23. Ms. Haney and Ms. Slack did not receive any other compensation for the services that they provided to BTL. . . . RESPONSE: Disputed. It is undisputed that Ms. Haney and Ms. Slack did not receive other compensation, but Defendants dispute the implication that any other compensation . . . was due . . . .").) "[A] Rule 56.1(b)(3)(A) response is not the place for purely argumentative denials." *Malec* v. *Sanford*, 191 F.R.D. 851, 583 (N.D. Ill. 2000).

[4] Haney unnecessarily attacks Rice's credibility, which is irrelevant on a motion for summary judgment because the court does not make credibility determinations. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

2

litigation began. (*Id.* ¶¶ 25–26.) Considering the matter "old business," Haney did not inquire after her missing shares because "she did not care enough to expend the energy to obtain her share certificate from [Bridge to Life]." (*Id.* ¶ 28.)

Other shareholders also had difficulties receiving their Wyoming certificates. Most relevant here are two other shareholders. First, the Gaffney Family Limited Partnership ("Gaffney") did not receive its full allotment of Wyoming certificates because Bridge to Life claimed that Gaffney never furnished consideration for the shares and that some shares were duplicates. (Dkt. 65 ¶ 28.) After not receiving its shares, Gaffney followed up with Bridge to Life several times, but Bridge to Life did not claim that Gaffney never provided consideration until sometime in 2015. (*Id.* ¶ 29.) Similarly, Bridge to Life disputed some of Lawrence Kravetz's shares (the subject of a related lawsuit pending before this court, *Kravetz* v. *Bridge to Life, Ltd.*, No. 16 CV 9194). Kravetz originally sued Bridge to Life for securities fraud in Delaware in December 2015. (Dkt. 37 at 9.)

Unlike Haney and these other shareholders, Slack never received the redomestication letter because Bridge to Life repeatedly mailed it to a personal address at which she no longer resided. (*Id.* ¶¶ 15, 18.) Although it is undisputed that Slack did not advise Bridge to Life that she had moved, taking the facts in the light most favorable to her, Bridge to Life knew her business address and could have mailed the letter there. (*Id.* ¶ 16.) Having never received the letter, Slack never sent in her Delaware certificate or an affidavit and thus never received a Wyoming certificate. (*Id.* ¶ 19.)

On July 31, 2018, Haney asked Bridge to Life to issue her Wyoming certificate. (*Id.* ¶ 31.) After waiting nine days for a response, Haney and Slack filed this suit on August 9, 2018. (*Id.*) In the complaint, they both claimed unjust enrichment (dkt. 1 at 16) and declaratory

3

judgment. (*Id.* at 26.) Haney also alleges civil theft (*id.* at 12), breach of contract (*id.* at 14), promissory estoppel (*id.* at 15), and violation of Wisconsin (where Haney and Slack both live), Wyoming, and federal securities laws. (*Id.* at 17, 21, 23, 25.)[5] Less than two months later, Bridge to Life offered to issue both Slack and Haney certificates for 100,000 Wyoming shares each if they returned their Delaware certificates or a notarized affidavit of lost stock certificate. (*Id.* ¶¶ 32, 34.) Neither has accepted the offer. (*Id.* ¶¶ 33, 35–37.)

The Wyoming certificates that Bridge to Life offered represent shares that still exist and that belong to Haney and Slack, as Bridge to Life never canceled or retired either Haney's or Slack's underlying shares. (*Id.* ¶¶ 49, 60.) Slack conceded this by not responding to the Rule 56.1 statement that her shares were never canceled or retired and that she never thought otherwise. (*Id.* ¶¶ 59–60.) *Malec*, 191 F.R.D. at 584 ("[T]he nonmovant's response should mirror the movant's statement in form (*i.e.* paragraph one should correspond to paragraph one of the movant's statement).") Haney "disputed" that her shares were not canceled but cited no evidence in the record to support that dispute. (*Id.* ¶ 49.) But "a general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec*, 191 F.R.D. at 584. Because "a nonmovant's failure to adhere to these requirements is equivalent to admitting the movant's case," *Malec*, 191 F.R.D. at 584, Haney and Slack admitted that their shares were never canceled or retired.

In the same vein, Haney and Slack filed a statement of additional facts asserting that several documents list Bridge to Life Wyoming shareholders but do not include them or, sometimes, list Haney as having no shares. (Dkt. 65 ¶ 37; dkt. 59-7; dkt. 59-8; dkt. 59-10; dkt. 59-11; dkt. 59-12; dkt. 59-13; dkt. 59-14.) They assert that these are the official shareholder rolls,

---

[5] Other claims have been dismissed or withdrawn. (*See generally* dkt. 37.)

4

but these documents are unauthenticated, and one is undated. "To establish a proper foundation at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge were admissible as business records." *Campbell* v. *Coca-Cola Enters., Inc.*, No. 11 C 1674, 2012 WL 182211, at *3 (N.D. Ill. Jan. 18, 2012). None of these documents is admissible, nor do they represent admissible evidence that could sustain plaintiffs' case at trial. *Malec*, 191 F.R.D at 585 ("[A]lthough the evidence supporting a factual contention need not be admissible itself, it must represent admissible evidence.").

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91

L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on their pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S. Ct. 2548; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24, 106 S. Ct. 2548.

## ANALYSIS

### I.     Choice of Law

This court held in a motion to dismiss in the related case that the court will apply the law of the state of incorporation to a "breach of contract claim relate[d] to the [corporation's] issuance of stock." *Kravetz* v. *Bridge to Life*, No. 16 C 9194, dkt. 42 at 4 (quoting *CDX Liquidating Tr.* v. *Venrock Assocs.*, 640 F.3d 209, 212 (7th Cir. 2011)). The same reasoning applies to the quasi-contractual claims of promissory estoppel and unjust enrichment. Wyoming law therefore applies. Because the parties have identified no material differences between Wyoming and Illinois law,[6] the court does not consider any of Bridge to Life's arguments under Illinois law forfeited. Wisconsin, Wyoming, and federal law apply to Haney's counts under Wisconsin, Wyoming, and federal statutes.

### II.    Slack

#### A.     Mootness

Bridge to Life argues that Slack's claims are moot. "Article III of the United States Constitution confers on the federal courts jurisdiction over cases and controversies. Both litigants must have a personal interest in the case at the beginning of the litigation, and their interests must

---

[6] Illinois has different elements of unjust enrichment than Wyoming, *see Prudential Ins. Co. of Am.* v. *Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008), but the difference is immaterial to the dispositive issues discussed below.

persist throughout its entirety. A case becomes moot when the dispute between the parties no longer rages . . . ." *Holstein* v. *City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994). "Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." *Id.* (quoting *Rand* v. *Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991))

Bridge to Life argues that it offered to satisfy Slack's entire demand when it offered her the opportunity to exchange her Delaware certificate for her Wyoming certificate. Slack responds that this was not complete relief because she wanted damages in addition to her Wyoming certificate. Although as explained below, Slack has no damages, Slack's claim is not moot because she requested a declaration that Bridge to Life must tender her a Wyoming share certificate without precondition. Bridge to Life offered to tender her Wyoming certificate only on the condition that she return her Delaware certificate. The tender was therefore not full relief.

### B. Unjust Enrichment (Count IV)

Although Slack's claims are not moot, they are meritless. Because Slack never received the redomestication letter, she never turned in her Delaware certificate and thus cannot claim to have lost something of value, unlike some of her fellow shareholders. (*See* dkt. 37 at 5 ("[N]othing tangible was taken or withheld from [Slack].").) Under Wyoming law, her Delaware shares carried over after Bridge to Life redomesticated to Wyoming; her failure to exchange certificates had no effect on her underlying shares. *See* Wyo. Stat. § 17-16-1810(f)–(g) (property of corporation and status of shareholders in foreign corporation that redomesticates to Wyoming unaffected by redomestication); Wyo. Stat. § 17-16-625 ("[T]he rights and obligations of shareholders are identical whether or not their shares are represented by certificates."). Nothing

7

was taken from her, and her position as shareholder was unaffected. Because Slack suffered no damages, Bridge to Life is entitled to summary judgment.

Slack argues that Bridge to Life "erased Ms. Slack from its shareholder roll," but she conceded in her Rule 56.1 response that it did not. Her simultaneous, contradictory claim in her statement of additional facts does not cite competent evidence in support. In other words, Slack has conceded that her shares remain valid and, despite her efforts to contradict her concession, could not prove otherwise at trial. Further corroborating this, Bridge to Life's position for the entire litigation has been that Slack is welcome to swap her Delaware certificate proving her ownership of those shares for a Wyoming equivalent whenever she wishes. There is thus no genuine issue of material fact that Slack is, as she has ever been, the owner of 100,000 shares of Bridge to Life common stock, and that the redomestication did not affect her at all. She therefore cannot prove damages.

Even if Slack could prove damages, she could not show that Bridge to Life unjustly enriched itself. Under Wyoming law, "a party who is seeking damages on the basis of unjust enrichment must prove the following four elements: (1) [v]aluable services were rendered, or materials furnished, (2) to the party to be charged, (3) which services or materials were accepted, used and enjoyed by the party to be charged, and (4) that the services or materials were furnished under such circumstances as would reasonably notify the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched." *Tetra Tech, Inc.* v. *Jerry Herling Constr., Inc.*, No. 2:08-CV-00210-SWS, 2011 WL 13272829, at \*4 (D. Wyo. Oct. 31, 2011). Slack did not provide any services or materials to Bridge to Life in connection with the redomestication and therefore cannot satisfy any of the elements of unjust enrichment.

If Slack claims that Bridge to Life was unjustly enriched when it accepted her services in 2006, the statute of limitations bars her claim. Slack last provided services to Bridge to Life in 2006 but filed this suit in 2018. The Wyoming statute of limitations for implied contracts is 8 years. Wyo. Stat. § 1-3-105(a)(ii)(B). Any claim for unjust enrichment related to services she provided in 2006 expired in 2014. Slack responds that the claim did not accrue until the redomestication in 2014, at which point she claims (contrary to her concession and without evidentiary support) that Bridge to Life retired her shares. But even if that were so, it would sound in conversion—taking away something she already owned—rather than unjust enrichment—failure to compensate for services. *Tetra Tech*, 2011 WL 13272829, at *4.

### C. Declaratory Judgment (Count X)

Slack's count for declaratory judgment seeks a declaration that Bridge to Life must issue a Wyoming certificate for 100,000 shares without precondition. She has cited nothing that would entitle her to a certificate that duplicates the certificate she already has. Slack argues that Bridge to Life has not shown any reason why it needs her Delaware certificate to issue a Wyoming certificate. But she is the plaintiff, not Bridge to Life. "In an action for declaratory judgment, the burden of proof rests with the party seeking relief." *United Nat'l Ins. Co.* v. *Fasteel, Inc.*, 550 F. Supp. 2d 814 (N.D. Ill. 2008). Slack shows no entitlement to Wyoming certificates under Wyoming law. Nor does she show any contractual entitlement. Even if she had received the exchange letter, it offered to issue a Wyoming certificate in exchange for Delaware certificate, which she now steadfastly refuses. Because Slack has no statutory or contractual right to her requested relief, Bridge to Life is entitled to summary judgment.

### III. Haney

#### A. Civil Theft (Count I)

Under Wisconsin law, "[a]ny person who suffers damage or loss by reason of intentional conduct that . . . is prohibited under . . . [the Wisconsin criminal theft statute] . . . has a cause of action against the person who caused the damage or loss." Wis. Stat. § 895.446(1). Because "[s]ummary judgment is the 'put up or shut up' moment in a lawsuit," *Siegel* v. *Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010), Haney has to produce competent evidence that she "suffer[ed] damage or loss" to survive summary judgment on her civil theft claim. She has failed to do so.

Haney has identified two potential theories of damages: (1) Her shares were canceled, and (2) her shares were diluted. The first theory fails because, as stated, she has conceded her shares were not canceled (Dkt. 58 ¶ 49); and her supposed evidence to the contrary is inadmissible. Although it is undisputed that Haney did not immediately receive her Wyoming certificate, that did not affect her underlying ownership of the shares. Wyo. Stat. § 17-16-625 ("[T]he rights and obligations of shareholders are identical whether or not their shares are represented by certificates."). Haney has not articulated any damages resulting from not having the certificate, as opposed to not having the shares. Moreover, even if she had, Bridge to Life immediately offered Haney to exchange her certificate, which would moot any such damages.

The second theory fails because, even if dilution can constitute damages, Haney has not shown that she suffered any dilution "by reason of" theft. Wis. Stat. § 895.446(1). Haney's dilution theory is that Bridge to Life issued new shares to employees, making Haney's shares less valuable. Haney cannot plausibly argue that issuing shares to others amounted to theft.

Because Haney has no evidence that she "suffer[ed] damage or loss," Bridge to Life is entitled to summary judgment on Count I.

## B.  Breach of Contract (Count II)

Bridge to Life first argues that Haney conceded that she did not have a contract. Bridge to Life served an interrogatory on Haney asking her to identify "each and every contract you claim to exist between you and any Defendant . . . ." (Dkt. 54-10 ¶ 7.) Haney responded, "no such contracts exist," although she made that answer "subject to and without waiving" general objections including vagueness. (*Id.*) In her response to Bridge to Life's statement of undisputed facts, Haney now claims that she misunderstood the interrogatory, believing that her response meant that "she had no contract to receive the Delaware shares in exchange for the services that she provided" but did not disclaim other contracts. (Dkt. 58 ¶ 37.) And in her opposition memorandum, Haney argues that Bridge to Life's argument "is an unfair attempt at 'gotcha.'" (Dkt. 57 at 14.) She does not, however, engage the argument on its merits.

Rule 37(c) precludes the use of evidence not disclosed in discovery "unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Because Haney's rationalizations do not persuade the court, the failure was not substantially justified. The interrogatory was clear, and Haney's response was incorrect. Haney's legal response is equally unhelpful; there is no "gotcha" exception to the Federal Rules of Civil Procedure. Haney cites no law to explain why she may present summary judgment evidence and arguments that contradict her discovery responses; she simply makes those arguments and cites that evidence.

But Haney's incorrect response to Bridge to Life's interrogatory was harmless because Haney had already made known to Bridge to Life that she considered the redomestication letter to outline the terms of a contract. She pleaded it in her complaint and attached it as an exhibit to the complaint. (Dkt. 1 ¶¶ 85–90; dkt. 1-2.) Moreover, as explained below, the breach of contract claim fails even if a contract existed. The same is not true, however, to the extent that Haney

11

claims that Bridge to Life breached her Subscription Agreement (*see* dkt. 57 at 14–15), which Haney neither mentioned in her complaint nor mentioned in response to Bridge to Life's interrogatory. Thus, under Rule 37(c), Haney may not argue that Bridge to Life breached the Subscription Agreement.

The court finds that Haney and Bridge to Life had a contract based on the redomestication letter. Bridge to Life sent the letter to Haney offering to issue a Wyoming certificate if she returned either her Delaware certificate or an affidavit of lost stock certificate. Haney submitted her affidavit, which was enough to constitute acceptance. *See Anderson Excavating & Wrecking Co.* v. *Certified Welding Corp.*, 769 P.2d 887, 890 (Wyo. 1988) ("The acceptance may be a return promise to perform or an actual performance . . . ."). Submitting the affidavit was also consideration because it disclaimed any interest in her now-lost certificate, a detriment. *Worley* v. *Wyo. Bottling Co.*, 1 P.3d 615, 622 (Wyo. 2000) ("A generally accepted definition of consideration is that a legal detriment has been bargained for and exchanged for a promise. Detriment means giving up something which immediately prior thereto the promisee was privileged to keep." (citations omitted)). Because the letter contained an offer, Haney accepted it, and Haney furnished consideration, a contract existed as a matter of law.

Bridge to Life is nonetheless entitled to summary judgment because, as explained above, Haney has no damages, a necessary element of a breach of contract claim. *Schlinger* v. *McGhee*, 268 P.3d 264, 268 (Wyo. 2012) ("entitlement of injured party to damages" is an element of breach of contract). Haney argues that she has damages because her shares were canceled, but they were not, as explained above. Haney also argues that her shares were diluted, but just as dilution was not caused by theft, neither was it caused by a breach of contract. The redomestication letter offered to "issue to you a new Wyoming stock certificate" in exchange for

12

the return of Delaware certificates. (Dkt. 1-2.) It did not promise never to issue common stock to employees. (*Id.*) Nor does Haney identify any other agreement not to issue more common stock. To the contrary, because the articles of incorporation authorized Bridge to Life to issue up to 50 million shares of common stock, Haney has known all along that her shares might validly be diluted if Bridge to Life issued more shares to others. (Dkt. 58 ¶ 3.)[7] Thus, even if dilution is an injury, it is not an injury caused by a breach of any contract. Bridge to Life is therefore entitled to summary judgment on Count II.

### C. Promissory Estoppel and Unjust Enrichment (Counts III and IV)

Because Haney had a contract with Bridge to Life, Bridge to Life is entitled to summary judgment on Haney's unjust enrichment and promissory estoppel claims. Where an express contract exists, the plaintiff cannot recover on quasi-contractual theories like promissory estoppel and unjust enrichment. *Wagner* v. *Reuter*, 208 P.3d 1317, 1322 (Wyo. 2009) (holding promissory estoppel and unjust enrichment "are precluded by the existence of an enforceable contract"). Haney therefore cannot recover on counts III (promissory estoppel) or IV (unjust enrichment). If Haney claims, as Slack does, that her unjust enrichment claim is related to her services between 2005 and 2006, rather than the redomestication in 2014, it is untimely. *Supra*, Section II.B.

### D. Securities Fraud (Counts V, VII, and IX)

As the court explained in its ruling on the motion to dismiss, the federal (count IX), Wisconsin (Count V), and Wyoming (Count VII) securities laws all have two-year statutes of limitations that run from the earlier of when Haney discovered the fraud or when a reasonably

---

[7] Haney no longer presses her earlier claim that Bridge to Life's directors and officers nefariously issued more shares to themselves at the expense of disfavored shareholders. Discovery debunked that theory.

diligent plaintiff would have discovered the fraud. (Dkt. 37 at 7–8.) Although diligence is ordinarily a question of fact, it becomes "an issue for the court" when "the relevant facts are undisputed and only one conclusion may be drawn from them." *Amerigas Propane, L.P. v. BP Am., Inc.,* 691 F. Supp. 2d 844, 859 (N.D. Ill. 2010). Here, Haney admits that after sending in her affidavit of lost stock certificate but not receiving her Wyoming certificate, she did not care enough to spend the energy inquiring after it. (Dkt. 58 ¶ 28.) This supports only one conclusion: Haney did not exercise ordinary diligence. Haney responds that she did not find it unusual that Bridge to Life would not respond to her because she had been totally out of touch with Bridge to Life's affairs for many years before the redomestication. (Dkt. 57 at 16.) That does not help her cause. The reason for her lack of diligence is irrelevant; what matters is the undisputed fact that Haney "did not care enough to expend the energy to obtain her share certificate from [Bridge to Life]." (Dkt. 58 ¶ 28.)

Taking all inferences in Haney's favor, there is no genuine dispute that a reasonably diligent plaintiff would have uncovered enough facts to file suit more than two years before Haney sued. The clock begins to run when a reasonably diligent plaintiff would have discovered "facts constituting the violation," which includes the facts necessary to show "that a defendant made a material misstatement *with an intent to deceive*—not merely innocently or negligently." *Merck & Co.* v. *Reynolds*, 559 U.S. 633, 649, 130 S. Ct. 1784 (2010).[8] In other words, the clock begins to run when the reasonably diligent plaintiff's investigation permits the plaintiff to "set forth facts in the complaint showing that it is 'at least as likely as' not that the defendant acted with the relevant knowledge or intent . . . ." *Id.* (citation omitted)

---

[8] Both parties recite the "inquiry notice" standard of cases like *Fujisawa Pharmaceutical Co.* v. *Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997), which *Merck* abrogated. *See McCann* v. *Hy-Vee, Inc.*, 663 F.3d 926 (7th Cir. 2011) ("[W]e note that *Merck* . . . disapproved of decisions of ours . . . which had held that the two-year period begins to run . . . upon 'inquiry notice.'").

Here, the purportedly false statement of fact was, "Upon our receipt of the . . . Affidavit for all shares of common stock held by you, we will issue to you a new Wyoming stock certificate . . . ." (Dkt. 1-2.) Issuing a new Wyoming certificate should have taken Bridge to Life no more than the time to receive the affidavit, plus some negligible amount of time to process it, plus the time to deliver mail from Wyoming to Wisconsin. Thus, days—a few weeks at most—after April 8, 2014, Haney should have known that Bridge to Life had not issued her Wyoming certificate as it stated it would in the redomestication letter. Certainly, a reasonably diligent plaintiff would have realized the statement was false before the statute of limitations expired.

Discovering that Bridge to Life made that statement with *scienter* was a simple matter of asking Bridge to Life within a reasonable amount of time where the Wyoming certificate was and when Haney could expect it. The undisputed facts show that when Haney eventually inquired after her shares—more than four years after she submitted her affidavit—Bridge to Life informed her that it believed that she had agreed to relinquish her shares. Moreover, other shareholders in the same situation inquired and collected enough information to sue for fraud more than two years before Haney did—the Kravetzes sued in 2015. (Dkt. 37 at 9; dkt. 58 ¶¶ 63–65.) On the other hand, there is nothing in the record suggesting that Haney could not have uncovered a potential claim by August 9, 2016 had she exercised any diligence.

Haney provides two central reasons why she could not have discovered facts supporting *scienter* by August 9, 2016. First, she claims that she needed to see discovery from the other fraud lawsuits like *Kravetz* v. *Bridge to Life* to learn that Bridge to Life allegedly systematically reviewed and canceled disfavored shareholders' shares during the redomestication. But that is not a fact she had to discover to support a fraud claim. All she needed to discover was that Bridge to Life knowingly rather than negligently misled when it said, "we will issue to you a

15

new Wyoming stock certificate." *Merck*, 559 U.S. at 649. Although Bridge to Life's treatment of other shareholders may support an inference of *scienter*, it is not a necessary fact that Haney had to discover before filing suit.

Second, Haney argues that the court cannot assume that Bridge to Life would have been as candid with her if she had asked after her certificate earlier. Haney thus proposes that the court must infer that if she had been reasonably diligent and inquired about her missing certificate earlier, Bridge to Life would have ignored her, stonewalled her, or made up a different pretext instead of explaining that it thought Haney had relinquished her shares.

But none of those inferences would save Haney's claims. Any answer Bridge to Life gave to a reasonably diligent inquiry, coupled with its continued failure to issue the certificate, would have sufficed to uncover facts supporting *scienter*. Had Haney asked, "Where is the Wyoming certificate you promised?"—the bare minimum amount of diligence—any response other than issuing the certificate would have provided enough evidence to sustain an allegation of *scienter*. If Bridge to Life refused to respond, she could infer that it had intentionally duped her into returning her affidavit and disclaiming her Delaware shares. Indeed, after Haney finally followed up in 2018, Haney waited only nine days for a response before suing Bridge to Life for securities fraud, apparently satisfied that she could plausibly allege *scienter*. (Dkt. 54-8 ¶ 11 (request for shares on July 31, 2018); dkt. 1 (complaint filed August 9, 2018).) Similarly, if Bridge to Life stonewalled Haney or strung her along, making up excuses why it could not issue her certificate, a reasonably diligent plaintiff could allege that Bridge to Life never intended to issue the certificate. Haney cites the Gaffney experience, which inquired about its shares after similarly not receiving its Wyoming certificates but allegedly received the run-around from Bridge to Life, which did not officially dispute their shares until 2015. (Dkt. 65 ¶ 29; dkt. 54-12

at 131:23–132:5.) This is evidence against Haney, not for her. Gaffney shows that a reasonably diligent plaintiff could have discovered facts to support *scienter* by 2015 even if Bridge to Life dithered. Yet Haney must show that reasonable diligence could not have uncovered facts to support *scienter* until August 9, 2016.

In short, Haney had two years to sue but took four-and-a-half years. Although the discovery rule delays the start of the limitations period, to benefit from it, Haney must show that a reasonably diligent plaintiff would not have discovered facts to support an actionable inference of *scienter* after two-and-a-half years of stonewalling or silence without receiving her Wyoming certificate. She cannot. Because any reasonable inquiry would have sufficiently uncovered facts to support a potential claim before August 9, 2016, no matter how Bridge to Life responded to the inquiry, the securities fraud claims are therefore untimely.

### E. Declaratory Judgment (Count X)

Haney's count for declaratory judgment fails for the same reasons as Slack in addition to the reasons why Haney's other claims fail.

### CONCLUSION

The motion for summary judgment is granted in favor of Bridge to Life, Ltd., and against Camille Haney and Barbara Slack.

Date: March 24, 2020

_____

U.S. District Judge Joan H. Lefkow